June **GUGLIELMI**

v.

Anthony **GUGLIELMI.**

No. 79–165–Appeal.

Supreme Court of Rhode Island.

July 7, 1981.

---

Revens & DeLuca, Ltd., John C. Revens, Jr., Warwick, for appellee.

Ira L. Schreiber, Providence, for appellant.

## OPINION

KELLEHER, Justice.

This is a Family Court proceeding in which on October 23, 1974, a final decree was entered granting an absolute divorce to June Guglielmi from her husband, Anthony Guglielmi. The final decree incorporated and merged within it the terms of a property-settlement agreement that had been executed earlier, on March 4, 1974. This appeal arises out of cross-petitions filed by each spouse, each seeking to hold the other in contempt for alleged failure to comply with the provisions of the agreement. In addition, the attorney who represented June Guglielmi filed a motion seeking to hold Anthony Guglielmi in contempt for his failure to pay a certain counsel fee. Hereinafter, we shall refer to June Guglielmi as "the wife" and to Anthony Guglielmi as "the husband."

The contempt hearing originally began in mid-October 1976 before a Family Court justice who, at the conclusion of the October hearing, continued the proceeding to an indefinite future time. Shortly thereafter the trial justice retired, and two years later in the fall of 1978 this controversy came on to be heard anew before another justice of the Family Court, who subsequently ruled that the husband was in contempt insofar as his obligation to the wife and her attorney was concerned and dismissed the husband's cross-petition.

In his appeal the husband claims that the trial justice erred because the obligations contained in the agreement were completely dependent on each other; therefore, since the wife had failed to live up to her part of the bargain, he was no longer obligated to comply with the agreement. Such an assertion requires us to review the terms of the agreement briefly.

In its pertinent parts, the agreement provided that the husband was to pay the wife's attorney a $4,000 counsel fee, with $2,000 paid on entry of the interlocutory decree and the balance to be paid when the final decree was entered. The marital domicile was to be the husband's, and he promised to provide the wife with an annual support payment of $13,000, which could be paid in equal monthly or weekly installments. The support payments would terminate upon the wife's remarriage or upon the death of either spouse. Since the wife had relinquished her interest in the marital domicile, the husband also agreed to pay her the sum of $25,000 over a five-year period, with $7,000 of this amount being paid upon the filing of the interlocutory

decree. This money was to assist the wife in establishing and furnishing a new residence. The wife also agreed to assign whatever interest she had in various stock certificates "apparently issued by Graphic Sciences, Inc. and others."

■ The argument made by the husband about the wife's failure to abide by her part of the bargain reminds us that ordinarily the covenants and promises in a bilateral contract are mutually dependent. *K & G Construction Co. v. Harris*, 223 Md. 305, 164 A.2d 451 (1960); 6 Williston, *Contracts* § 817 at 33 (3d Jaeger ed. 1962). Conversely, if the promises are independent, then one party is bound to perform notwithstanding the other party's inability or refusal to discharge his or her obligation. *K & G Construction Co. v. Harris*, 223 Md. 305, 164 A.2d 451 (1960); 11 Williston, *Contracts* § 1327 at 157 (3d Jaeger ed. 1968). Unless the contractual language is clearly explicit, the question of whether the covenants are dependent or independent must be determined by construing the language used by the contracting parties. *Marra v. Colaluca*, 47 R.I. 210, 213, 132 A. 6, 7 (1926). It has often been said that property-settlement agreements arrived at as a result of divorce are to be interpreted as ordinary contracts. *Greenwald v. Blume*, 312 So.2d 783 (Fla.App.1975); *Heinmuller v. Heinmuller*, 257 Md. 672, 264 A.2d 847 (1970); *Forester v. Weber*, 298 N.W.2d 96 (S.D.1980).

However, we believe that a property-settlement agreement that comes about as a result of a divorce proceeding should be considered in a light somewhat different from that of the usual contract. Inextricably intertwined in the disposition of property upon divorce is the continuing duty of one spouse to support the other. *See Brown v. Brown*, 48 R.I. 420, 424, 138 A. 179, 181 (1927). Consequently, unlike an ordinary contract, a property settlement upon divorce involves a duty that has existed since the parties were first married. This duty reflects the needs of a spouse who is to receive support payments. As a matter of public policy, courts stand guard against any unjustified temporary sacrifice

of such payments. *See* Clark, *Law of Domestic Relations* § 16.6 at 537 (1968).

■ Again and most important, self-help remedies by parties to a property settlement upon divorce should be discouraged. *See* Uniform Marriage and Divorce Act § 315 (1973 amendment), 9A Uniform Laws Annot. at 183 (West 1979). Since divorce often involves tremendous emotional anguish, the parties to a property-settlement agreement will often be less than cooperative and rational in resolving differences that arise under the agreement. The judicial remedy whereby one party moves to hold the other in contempt is a far better way to resolve disputes concerning whether each party has performed his or her obligation. Of course, parties may provide differently as a matter of contract, providing they do so clearly.

It is our belief that the principle that best encapsulates our preceding discussion concerning the dependent or independent obligations of a divorced couple has been expressed by the Supreme Court of North Carolina in *Wheeler v. Wheeler*, 299 N.C. 633, 263 S.E.2d 763 (1980) where the court pointed out that (1) not every violation of the terms of a separation agreement by one spouse will exonerate the other from performance; (2) in order that a breach by one may relieve the other from liability under the agreement, the respective covenants must be *interdependent rather than independent*; and (3) the breach (a) must be of a substantial nature, (b) must not be caused by the fault of the complaining party, and (c) must have been committed in bad faith. *Wheeler v. Wheeler*, 299 N.C. 633, 641, 263 S.E.2d 763, 768 (1980); *Smith v. Smith*, 225 N.C. 189, 197–98, 34 S.E.2d 148, 153 (1945).

■ As applied, these principles presume that the promises within a property-settlement agreement are independent unless performance of one promise is expressly conditioned upon the performance of another promise. In *Wheeler*, the court found a dependent promise when the husband specifically contracted to pay alimony to the wife only "so long as she 'perform[ed] the conditions of the contract.'" *Wheeler v.*

*Wheeler,* 299 N.C. at 642, 263 S.E.2d at 768. The *Wheeler* court noted that each of the respective duties of the parties was clearly dependent rather than independent.

 When this rule is applied to the pending controversy, it is clear that the husband was not excused from paying the balance of the attorney fee, for there is no language in the agreement to indicate that payment of the fee was in any way dependent upon the wife's duty to convey the stock. The husband should have paid the fee to the attorney and then moved to hold his wife in contempt for her alleged failure to produce the stock. Since it is undisputed that the balance of the fee has not been paid, we affirm the trial justice's finding of contempt as it relates to this issue.

In a similar vein, the husband's failure to continue to make the installment payments on his $25,000 promise cannot be excused by the wife's nonproduction of the stock. There is not one word in the 1974 agreement to indicate that the $25,000 payment was dependent on the wife's transfer of the stock. Rather, the $25,000 stipulation clearly indicates that this money was given to help the wife defray the cost of her immediate housing needs since she had relinquished her interest in the marital domicile. In light of the presence of this language and the absence of any other language indicating interdependency, we shall also affirm the finding of contempt as it relates to the husband's failure to pay the installments due on the $25,000 payment.

This brings us to the Family Court's failure to hold the wife in contempt for her failure vis-à-vis the stock. In denying the husband's contempt motion, the trial justice ruled that since the husband in his contempt motion had alleged that he had in fact received the stock, the husband was bound by this pleading. We believe that the trial justice erred in taking such a position.

The evidence at the hearing relating to the stock transfer was, to say the least,

confusing. At one point the husband denied that his wife had ever turned the stock over to him. The wife's response to the husband's contempt attempt was an insistence that she had assigned whatever interest she had in the stock to her husband. In an affidavit that is part of the record, she concedes that she never found all of the "Graphic Sciences certificates." The husband testified that he had never seen this affidavit.

The record clearly indicates agreement by the spouses, at least concerning the status of the Graphic Sciences stock—it is not in the possession of the husband. Thus, the trial justice's reliance on an obvious mistake in the pleadings [1] requires that this issue be remanded for a factual determination regarding the exact status of the stock and regarding whether or not a contempt finding against the wife is in order.

The husband's appeal is denied in part and sustained in part; the judgment appealed from, insofar as it relates to the denial of the husband's contempt petition, is vacated, but in all other respects the judgment is affirmed; and the case is remanded to the Family Court for further proceedings.

---

1. The husband made it clear at the hearing that the couple had stock that was in their joint names and that the wife had assigned whatever interest she had in that stock to him.