**CONTINENTAL CASUALTY CO., Plaintiff, Appellee,**

v.

**CANADIAN UNIVERSAL INSURANCE CO., Defendant, Appellee.**

**Appeal of the UNIVERSITY OF MASSACHUSETTS, Defendant.**

**CONTINENTAL CASUALTY CO., Plaintiff, Appellee,**

v.

**CANADIAN UNIVERSAL INSURANCE CO., Defendant, Appellant.**

**Nos. 90–1406, 90–1491.**

United States Court of Appeals, First Circuit.

Heard Oct. 1, 1990.

Decided Jan. 25, 1991.

---

Terence P. O'Malley with whom William E. Searson, Boston, Mass., was on brief, for University of Massachusetts.

Edward L. Kirby, Jr. with whom John D. Lychak, David J. Gorman and Hennessy, Killgoar & Ronan, Boston, Mass., were on brief, for Canadian Universal Ins. Co.

Patricia A. Gotschalk with whom John W. Scott, Drinker, Biddle & Reath, Washington, D.C., Terrance Hamilton and Casner & Edwards, Boston, Mass., were on brief, for Continental Cas. Co.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and WOODLOCK, District Judge.*

BOWNES, Senior Circuit Judge.

This is an appeal from a summary judgment order of the district court in a declaratory judgment action brought by plaintiff-appellee Continental Casualty Company ("CNA") against appellants Canadian Universal Insurance Company ("CUI") and the University of Massachusetts ("UMass", "the University"), which was insured by both companies. CNA sought a declaration that CUI was obligated to indemnify UMass for amounts paid to satisfy a judgment in *Irvine v. University of Massachusetts*, No. 80–2532–Z (D.Mass. Feb. 27, 1985) ("*Irvine*") and for the amount paid in settlement in *Bagley v. Hoopes*, No. 81–1126–Z (D.Mass. filed May 1, 1981) ("*Bagley*"). CUI denied coverage and counterclaimed that it was CNA that owed indemnification to UMass; UMass crossclaimed against CUI and counterclaimed against CNA seeking indemnification.

On motions for summary judgment filed by all parties, the district court granted CNA's motion with respect to the *Irvine* and *Bagley* coverage, granted CUI's motion with respect to *Bagley*, and denied UMass' motion with respect to both *Irvine* and *Bagley*. The court held: (1) that CUI was obligated to indemnify UMass for amounts paid to satisfy the *Irvine* judgment; (2) that to the extent CNA had already indemnified UMass for *Irvine*, CNA was entitled to reimbursement from CUI; and (3) that neither CNA nor CUI was obligated to indemnify UMass for the amounts paid to settle the *Bagley* claims. UMass appeals from the judgment as regards the *Bagley* claim and CUI appeals from the judgment as to the *Irvine* claim; the appeals have been consolidated.

---

* Of the District of Massachusetts, sitting by designation.

## I. PROCEEDINGS IN DISTRICT COURT

Janice Irvine was employed as a staff supervisor and coordinator at the UMass Health Education Center ("HEC"), part of the Health Education and Information Program ("HEIP"). Dr. James Hoopes was the head of HEIP and Ms. Irvine's boss. According to the allegations of her complaint, Irvine obtained information that Hoopes had sexually harassed female work-study students under his supervision. After she reported Hoopes' conduct, Irvine's position was eliminated and she was transferred to the University Counseling Center under the supervision of John Robinson. Robinson allegedly threatened to fire her if she "got out of line" and, calling her a "troublemaker," issued instructions that she be assigned to undesirable work and night hours. Eight months later, after being transferred from one unproductive position to another, Irvine's employment at UMass was terminated.

Irvine brought an action against the University and several of its administrators, including Robinson, raising numerous federal and state claims. She alleged that the employment decisions were made in retaliation for her reporting Hoopes' sexual harassment of his students. Following a jury trial, Irvine prevailed against Robinson on her federal civil rights claim. The jury found that Robinson took impermissible "adverse employment action" against her. Irvine was awarded $100,000 in compensation for pain and suffering and $6,100 for medical expenses. She was later awarded $69,596.55 for attorney's fees and expert witness fees. In a subsequent settlement agreement between CNA, UMass, Irvine and Robinson, CNA agreed to pay Irvine $101,235 plus interest at 8.5% from November 1, 1986, to February 1, 1987, and Robinson his attorney's fees in the amount of $4,865. CNA also obtained the right to seek indemnification from CUI.

The *Bagley* plaintiffs were eight work-study students who alleged they were sexually harassed by Dr. Hoopes. They brought suit against Hoopes, the University and various university officials, claiming multiple federal and state constitutional, statutory and common law violations. They alleged, *inter alia*, sexual harassment, discrimination, deprivation of due process, infliction of emotional distress, and assault and battery. The University defendants were alleged to have taken retaliatory action against the *Bagley* plaintiffs for registering their complaints against Hoopes. On motions to dismiss, the trial court dismissed certain of the claims against the defendants[1] and let stand the following claims: as against the University, claims under Title VII and Title IX; as against the University administrators, claims under 42 U.S.C. § 1983 and Title VII insofar as injunctive and declaratory relief were sought; and as to the University individuals, claims under §§ 1983 and 1985, under Mass.Gen.Laws ch. 151B, § 4(4) and ch. 12, §§ 11H, 11I, and for intentional infliction of emotional distress. Prior to trial, the *Bagley* case was settled by UMass for $225,000 "in full satisfaction of said plaintiffs' claims for damages, costs, and attorneys' fees." Both insurance companies disclaimed coverage of the *Irvine* judgment and the *Bagley* settlement.

CNA had issued to UMass a "board of education liability" policy that included the University, University employees and members of the Board of Trustees as insureds. The policy provided coverage for loss from a "Wrongful Act," defined as

> any actual or alleged errors or misstatement or misleading statement or act or omission or neglect or breach of duty by the Assureds in the discharge of their duties, individually or collectively, or any matter claimed against them solely by

---

**1.** The trial court distinguished among the defendants in the following manner: "(a) the University; (b) university administrators President Knapp, the Trustees, and defendants Corrigan [Chancellor], Stockton [Director of Health Services] and Tubbs [Vice Chancellor of Student Affairs] in their official capacities ('the administrators'); and (c) university individuals—defendants Corrigan, Stockton, Tubbs, Desmond [Tubbs' assistant], Robinson and Soler [Health Education Center supervisor]—in their individual capacities."

reason of their being or having been Assureds during this policy period.

Among the exclusions in the CNA policy was an exclusion for other insurance: "The Insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds ... which is insured by another valid policy or policies...."

CUI's policy with UMass was for "general liability insurance" and included as insureds "employees, agents, or other persons while acting for or on behalf of the University of Massachusetts...." The policy stated that it afforded "primary insurance," subject to certain exceptions. Coverage A of the policy insured against liability for bodily injury caused by an "occurrence," defined as "an accident ... which results in bodily injury ... neither expected nor intended from the standpoint of the insured." Under Coverage P, "Personal Injury Liability," UMass was insured for certain intentional acts:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy ...;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy[.]

In a general amendatory endorsement, Coverage P was amended to include:

Group D—Bodily Injury, Sickness, Disease, Disability, Shock, Mental Anguish, Mental Injury and Humiliation.

Group E—Injury arising out of assault or battery by the Campus Police for the protection of persons or property.

The district court held that the CUI policy covered the *Irvine* claim that a UMass employee took adverse employment action against Irvine in retaliation for her reporting another employee's alleged sexual harassment of work-study students. Although the court determined that the acts of employment discrimination were not "occurrences" within the Coverage A policy definition, it held that there was coverage pursuant to the Coverage P section of the CUI policy providing coverage for "Bodily Injury, Sickness, Disease, Disability, Shock, Mental Anguish, Mental Injury, and Humiliation." The court also found that UMass had not breached the cooperation clause of the CUI policy and that CNA was relieved of any obligation to UMass due to the "other insurance" exclusion in the CNA policy.

With respect to the *Bagley* settlement, the district court held that UMass had failed to meet its burden of showing which of the settled claims, if any, were covered under either the CNA or CUI policy. Accordingly, the court ruled that neither insurer was obligated to indemnify UMass for the amounts the University had paid to settle *Bagley*.

## II. DISCUSSION

■ Our review of the district court's disposition of the motions for summary judgment is plenary, *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990), and requires us to determine whether "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Upon motion, summary judgment is "mandate[d] ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is not for the court on summary judgment to weigh the evidence "but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making this determination we view the record in the light most favorable to the party opposing the motion, accepting all reasonable inferences favoring that party. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). This standard applies even where, as here, the district court is faced with summary judgment motions from all parties. *Griggs–Ryan*, 904 F.2d at 115.

*The Irvine Claim*

CUI contends that the district court, in finding coverage in Coverage P, Group D of CUI's policy, erred in holding CUI liable to reimburse CNA—and to indemnify UMass—for the award of damages in the underlying *Irvine* action. According to CUI, Coverage P does not cover the loss at issue. CUI claims that the amendatory endorsement adding Group D to Coverage P is ambiguous, and the ambiguity, argues CUI, must be construed in favor of the insurer.

■ "[W]here the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide." *Atlas Pallet, Inc. v. Gallagher,* 725 F.2d 131, 134 (1st Cir.1984) (citing *Edmonds v. United States,* 642 F.2d 877, 881 (1st Cir.1981)); *accord Cody v. Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 439 N.E.2d 234, 237 (1982). In interpreting policy language, the court must give to it its ordinary meaning and "construe[ ] [it] in the sense that the insured will reasonably understand to be the scope of his coverage." *Slater v. U.S. Fidelity and Guaranty Co.,* 379 Mass. 801, 400 N.E.2d 1256, 1258 (1980).

"Coverage P—Personal Injury Liability" in its original form provided coverage for loss in connection with personal injury liability resulting from three separate offense Groups, A, B, and C.[2] In the pertinent part of an amendatory endorsement,[3] the following language was added:

Part 1 "Coverage P—Personal Injury" is amended to include:

**2.** In pertinent part, coverage is provided for:
   Group A—false arrest . . .;
   Group B—. . . libel or slander . . .;
   Group C—wrongful entry or eviction . . .[.]

**3.** The endorsement also added "Group E—Injury arising out of assault and battery by the Campus Police for the protection of persons or property" and deleted the exclusion for personal injury resulting from an offense related to employment of the injured person by the insured.

(1) Group D—Bodily Injury, Sickness, Disease, Disability, Shock, Mental Anguish, Mental Injury, and Humiliation.

■ We agree with the district court that the class of injuries listed in Group D of the policy endorsement plainly covers the damage award to Irvine for the mental and emotional injury she suffered due to the actions of a UMass employee. Nothing on the face of the amendatory endorsement to Coverage P indicates that the Group D language did not mean precisely what it said, i.e., that the policy would provide coverage for liability resulting in bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation.

CUI argues to the contrary, that the language of Group D does not mean what it literally says and that it is thus ambiguous. In its view, Group D does not stand alone but rather represents a modification to the type of injuries that may result from the enumerated offenses found in Groups A, B, and C and new Group E in the endorsement.

■ "[A]mbiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." *Jefferson Ins. Co. v. Holyoke,* 23 Mass.App.Ct. 472, 503 N.E.2d 474, 476 (1987). CUI asks that we ignore the plain language that it negotiated and agreed to include in the policy and instead ascribe to that language a meaning that does not appear. If CUI had intended the interpretation of Group D that it now advances, it could and should have written it that way. "[It] did not do so, and we cannot distort the plain policy language to give it that construction." *Save–Mor Supermarkets, Inc. v. Skelly Detective Service, Inc.,* 359 Mass. 221, 268 N.E.2d 666, 670 (1971).[4]

**4.** In addition to seeking a ruling that the language is ambiguous, CUI contends that it is entitled to relief from the general rule that ambiguous policy provisions are to be construed against the insurer who drafted them, *see, e.g., Liberty Mutual Ins. Co. v. Tabor,* 407 Mass. 354, 553 N.E.2d 909, 914 (1990). It bases its argument on the claim that UMass was a "sophisticated insured" that actively participated in procuring the policy. Although we recently accepted a similar argument in *Falmouth National*

A policy provision that is unambiguous "must be given its proper effect." *Mutual Fire, Marine & Inland Ins. Co. v. Costa,* 789 F.2d 83, 87 (1st Cir.1986). The language in Group D is clear: damages arising from the injuries there listed, when caused by the insured, are covered by the policy. The damages awarded in the underlying *Irvine* action were for pain and suffering for mental and emotional injuries caused by a UMass employee. Falling squarely within the Group D list of covered injuries, the *Irvine* damages were covered by the CUI policy.[5]

■ CUI claimed in the district court that UMass had breached the cooperation clause of the policy and was therefore not entitled to reimbursement from CUI for the costs of defending the *Irvine* action. The district court rejected the claim. In the section of its brief to this court on *Irvine,* CUI merely mentioned that it sought review of the district court's ruling on this matter; the issue of noncooperation was not briefed. Because of "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[,]" *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), we do not consider the issue of noncooperation.

Having determined that the CUI policy provided coverage for the *Irvine* judgment, we consider what coverage, if any, was provided by UMass' policy with CNA. The

CNA policy includes, in pertinent part, the following "other insurance" clause limiting its liability: "The insurer shall not be liable to make any payment for loss in connection with any claim against the Assured: (1) which is insured by another valid policy or policies...."

■ The rule in Massachusetts with respect to "other insurance" provisions is that courts will effectuate the language of the policies. *Mission Insurance Co. v. U.S. Fire Ins. Co.,* 401 Mass. 492, 517 N.E.2d 463, 466 (1988). The CNA "other insurance" clause is an "escape clause," which operates to deny coverage if there is other available insurance. *Id.,* 517 N.E.2d at 465 n. 3. The CUI policy does not contain a similar provision. Rather, CUI's "other insurance" clause, Condition 6, states that the policy provides "primary insurance" unless expressly stated "to apply in excess of or contingent upon the absence of other insurance." Condition 6 further states, "When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."

There is no express statement in CUI's Coverage P, personal injury coverage, that the insurance is excess or contingent on the absence of other insurance. It is therefore primary insurance with respect to the *Irvine* claim. The effect of CNA's escape

*Bank v. Ticor Title Ins. Co.,* 920 F.2d 1058 (1st Cir.1990), that case involved an insured that had negotiated specific terms tailored to govern the outcome of a particular lawsuit. *Id.,* at 1060–61. No such particularized drafting participation by UMass appears in the record here. Moreover, because we have not found ambiguity in the policy in the first instance, we need not address the relative sophistication of UMass as an insured. We have reviewed the materials proffered by CUI in that regard, however, and conclude that the facts do not support a finding of equal bargaining power between CUI and UMass.

**5.** We note that recently, in *Titan Holdings Syndicate, Inc. v. Keene,* 898 F.2d 265, 270 (1st Cir. 1990), we recognized that liability insurance policies generally provide coverage based on

offenses rather than on the types of injuries sustained. The policies at issue in *Titan Holdings* contained endorsements similar to CUI's Group D, listing new injuries to be included under "personal injury." Because the insured did not mention or base an argument on the endorsements, however, we expressly declined to address their possible applicability, but noted:

These endorsements, by adding "mental injury, anguish or shock" and "humiliation" to the definition of "personal injury" seem to expand the scope of coverage for personal injury to include claims against the insured based upon the *type* of injury suffered, rather than just claims for injuries arising from specifically enumerated *offenses.*

*Id.* at 271 n. 6 (emphasis original).

clause is to render CNA's coverage contingent on the absence of other insurance. Because the CUI insurance is primary and CNA's insurance is contingent, the plain language of CUI's Condition 6 affords complete coverage for the *Irvine* claim, as the district court ruled.

### The Bagley Claim

With respect to the settlement reached between UMass and the *Bagley* plaintiffs, the district court granted summary judgment in favor of both insurance companies and against the University, holding neither company liable to indemnify UMass. The court ruled that UMass had failed to meet its burden to prove that the claims underlying the settlement were covered by either policy and to allocate the settlement amount between covered and uncovered claims.

■ "If the insurer denies coverage for all or part of a settlement, the insured should have the burden of proving the compromise of claims that were covered by the general insuring clause...." A. Windt, *Insurance Claims and Disputes* § 6.29 at 351 (2d ed. 1988). The insured's burden to allocate arises only after it has been demonstrated that a portion of the verdict or settlement is covered by the policy or policies and a portion is not. *See American Home Assur. Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 30–31 (1st Cir.1986) (court first determined only one claim covered by policy, then determined what portion of settlement amount attributable to covered claim); *Duke v. Hoch*, 468 F.2d 973, 976 (5th Cir.1972) ("Obviously, the troublesome problem of separating out of the unallocated verdict the precise damages for which [the insurer] was responsible would be reached only if it was first established that a portion of the verdict represented liability for noncovered acts.").

UMass claims that all of the *Bagley* settlement was within CNA's coverage for wrongful acts. It argues alternatively that, should this court uphold the district court's determination of coverage under the CUI policy for the *Irvine* judgment, the

CUI policy provides coverage as well for the substantially similar damages in *Bagley*. As with *Irvine*, the construction of the policy language to determine coverage is a question of law. *Cody*, 439 N.E.2d at 237.

UMass argues that the district court erred in stating that the University presented nothing "other than the settlement agreement to help determine whether, and to what extent, covered claims were the basis of settlement." Strictly speaking, the University is correct, for it had in fact also presented the following: the district court's Memorandum and Order on the motions to dismiss in *Bagley* ("*Bagley* Memorandum"), outlining which of the *Bagley* claims survived and as to which defendants; an affidavit stating that the *Bagley* Memorandum had provided the basis for the settlement of the *Bagley* claims; and an affidavit by UMass Treasurer Robert Brand listing the individual amounts paid in settlement ("Brand affidavit"). Our review of the pertinent material below leads us to conclude, although upon an analysis different from that of the district court, that UMass' motion for summary judgment on the *Bagley* settlement claim was properly denied. We also find, however, that the district court erred in granting summary judgment for CNA and CUI on the *Bagley* settlement claim.

The settlement agreement was made between the eight *Bagley* plaintiffs and the following defendants: the University; Victoria Soler; David C. Knapp; Robert Corrigan; David Stockton; Levester Tubbs; and the University Board of Trustees. Knapp and the trustees had been sued as University administrators; Corrigan, Stockton and Tubbs had been sued as administrators and individuals; and Soler only as an individual.[6] The University and the other defendants agreed to pay to the plaintiffs $225,000, which included damages, costs and attorney's fees. They also agreed to remove from the plaintiffs' University records any performance evaluations written by Soler and to document their remov-

---

**6.** Soler was employed by the University as the Health Education Center supervisor. See n. 1,   *ante,* for a full list of the positions held by all of the individual defendants.

al, and to provide, if requested by two named plaintiffs, explanatory addenda to their academic transcripts. The Brand affidavit states that nine checks totaling $225,-000, drawn on University funds, were issued to the eight plaintiffs and their attorneys. It lists the nine separate amounts [7] but does not indicate to whom each check was made out.

In the *Bagley* Memorandum, upon which the settlement was based, the district court had allowed the following three sets of claims to go forward: Title VII and Title IX, as to the University; 42 U.S.C. § 1983 and Title VII for injunctive and declaratory relief, as to the University administrators (Knapp, Corrigan, Stockton and Tubbs); and, as to the individuals (Corrigan, Stockton, Tubbs, Desmond, Robinson and Soler), claims based on 42 U.S.C. §§ 1983 and 1985, state statutory provisions prohibiting retaliation in employment for opposing gender discrimination and prohibiting interference with federal or state rights by intimidation, and intentional infliction of emotional distress. Only the third set of claims could generate damages.

The University's argument that it met its burden of proving coverage for the entire settlement is based on its position that all of the settled *Bagley* claims are covered by the policies. It fails to recognize, however, that the settlement amount entailed not only compensatory damages but fees for the plaintiffs' attorneys. We turn first to the issue of damages.

■ As with the damages awarded in *Irvine*, CNA's "other insurance" exclusion operates to relieve CNA of liability for what otherwise would be its coverage for wrongful acts if CUI's Group D of Coverage P covers the damages claim. The *Bagley* demand letter preceding the settlement stated that the plaintiffs sought damages for emotional distress and related medical expenses; the settlement agreement stated only that the damages did not cover lost income. Because the damages thus resulted from injuries listed in Group D, CUI's policy provides coverage if the individual University defendants are covered as insureds. CUI claims that because its "named insured" endorsement only covers "employees ... or other persons while acting for or on behalf of the University" the individuals are not covered. There is no dispute that the complained of retaliatory actions by Soler, Corrigan, Stockton and Tubbs occurred at the University and were committed by the defendants in their capacity as University employees. Construing the above-quoted policy language in its usual and ordinary sense, *see Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966, 968 (1978), we conclude that the University individuals were covered by the CUI policy. CUI is therefore liable for that portion of the settlement that represents damages.

As for the settlement amount paid as fees, nothing submitted by UMass indicates which one of the nine listed checks went to the attorneys. Furthermore, knowing the amount of the settlement attributable to fees is not enough. Whether or not the fees are covered by one insurance policy or the other,[8] or neither, depends on determining which claims entitled the plaintiffs to fees and as to which claims the fees were actually attributable.

Attorney's fees were permitted for the Title VII and Title IX claims against the University. *See* 42 U.S.C. § 2000e–5(k); 42 U.S.C. § 1988. Although no damages were payable for these claims, the settlement did provide for injunctive relief by the University. It is therefore possible that some of the fees were attributable in fact to work performed by the plaintiffs' attorneys relative to these claims. Attorney's fees were also allowable for the Title VII and § 1983 claims for injunctive relief against the UMass administrators, and some of the fees may have compensated the attorneys

---

**7.** The nine checks were for the following amounts: $89,000; $21,000; $10,000; $21,000; $10,000; $10,000; $15,000; $21,000; and $28,-000.

**8.** The CNA policy covers attorney's fees. The CUI policy does not appear to cover fees, CUI has stated that it does not, and UMass does not point to any CUI provision that would cover attorney's fees.

378

for work associated with these claims. With respect to the remaining claims against the individual defendants for damages under federal and state statutes and intentional infliction of emotional distress, at least some of these claims entitle prevailing plaintiffs to recover attorney's fees. *See, e.g.,* 42 U.S.C. § 1988 (providing fees for §§ 1983 and 1985 violations); Mass. Gen.Laws ch. 12, § 11I (fees for violation of statute). A portion of the fees paid in settlement may have been attributable to these claims.

CUI's policy, although it covers the damages, does not provide coverage for plaintiffs' attorney's fees. To the extent, therefore, that the fees portion of the settlement amount relates to attorney work performed in connection with the claims for damages, CUI is not liable.

The CNA policy covers wrongful acts and attorney's fees as against all the defendants. Under the CNA policy, where there is "other insurance" for a claim CNA "shall not be liable to make any payment for loss in connection with" such claim. CNA, therefore, is only responsible for attorney's fees generated in connection with wrongful acts covered by its own policy, and is therefore not liable for the attorney's fees attributable to the damage claims covered by the CUI policy. The same is true for the claims for injunctive relief against the University administrators, who are covered by the CUI policy which does not provide for fees. With respect to the Title VII and Title IX claims against the University itself, however, there is no "other insurance" relative to CNA, as CUI does not insure the University as an entity, only its "trustees ..., officers, directors, ... faculty members, employees, agents, or other persons while acting for or on behalf of the University of Massachusetts...." Fees associated with the claims for injunctive relief against the University entity are therefore within the coverage of the CNA policy.

■ To summarize, the evidence shows the following with respect to the *Bagley* settlement: CUI is liable to indemnify UMass for that portion of the settlement paid as damages; CNA is liable for that portion of the settlement representing attorney's fees attributable to the Title VII and Title IX claims against the University.

What the evidence does not show, however, is what portion of the settlement represents damages, what portion attorney's fees, and what portions of the fees are attributable in fact to which underlying claims for relief. In short, as the district court held, UMass failed to show the factual basis for the settlement. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion...." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. The University's motion for summary judgment was properly denied.

The district court granted summary judgment in favor of CNA and CUI against UMass because UMass had failed to prove the allocation of covered and noncovered claims after CNA raised the allocation issue in its motion. Parties moving for summary judgment are entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. Only if there is no genuine issue of material fact are the insurers entitled to summary judgment. "The question is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor." *De Arteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir.1988) (emphasis original).

The determination of how much of the settlement payment was for damages and how much was for attorney's fees is a question of material fact. As discussed *ante,* all of the sums paid to the *Bagley* plaintiffs as damages are covered by the CUI policy. Some of the attorney's fees might be covered by the CNA policy. This cannot be determined without specific findings on how the attorney's fees were computed.

Despite the lack of specification by UMass at the summary judgment stage of the proceedings, we cannot say, as did the district court, that CNA and CUI were entitled as a matter of law to judgment in their favor. After all, this is a declaratory judgment action in which coverage of the respective policies is the main issue.

CNA argues that it would be unfair to allow UMass to allocate the amounts after the coverage issue is decided. According to CNA, once it has been determined which policy covers which claims, an insured would naturally tend to tailor its proof of what amount was paid in settlement to whom and for what accordingly. This fear is unwarranted in this case. Where the damages have been held to be covered by CUI's policy only, the only remaining factual question is the total amount of the settlement paid as damages. With regard to the fees paid to the *Bagley* plaintiffs' attorneys, the apportionment based on work performed among the various legal claims is within the control of the plaintiffs' attorneys, not UMass. As we have previously held,

> [D]espite the problems that are inherent in any post facto analysis of settlement claims, if the district court is to make an allocation of the settlement amount, it should accept whatever evidence is available regarding the intent behind the settlement decision. If the court finds that there is a material issue of fact as to how the settlement amount was allocated, that finding should be made at trial and not on summary judgment.

*American Home Assur. Co.,* 786 F.2d at 31.

In its motion for summary judgment and its brief to this court, CUI raises an issue concerning the University's breach of its duty under the policy to cooperate with CUI in the defense of the *Bagley* litigation. According to CUI, the breach relieves the company of any liability to indemnify UMass. CUI's motion refers to an affidavit in support of its factual averments, which, for some reason, is not part of the record on appeal. Because such a claim is fact-sensitive, we believe that the district court ought to rule on it in the first instance on remand. *See Diamond International Corp. v. Allstate Ins. Co.,* 712 F.2d 1498, 1504 (1st Cir.1983) (status of employee under insurance policy fact-sensitive and thus not decided on appeal).

Because we remand for further proceedings that may result in no coverage by the CNA policy, we do not address CNA's other arguments.

### III.   CONCLUSION

We uphold the summary judgment for CNA on the *Irvine* judgment, affirm the denial of summary judgment for UMass on the *Bagley* settlement, and reverse the summary judgment for CNA and CUI on the *Bagley* settlement. On remand the court shall determine the total amount of the settlement paid as damages and enter judgment against CUI in that amount. As to the remainder of the settlement, which is attorney's fees, the court shall apportion the amount among the various surviving underlying *Bagley* claims. To the extent it may be determined that a portion of the fees represents compensation for work performed in connection with the Title VII and Title IX claims against the University, the court shall enter judgment against CNA in that amount. The burden shall be on UMass to produce the evidence necessary for these determinations. In addition, UMass claims it is entitled to $51,210.27 in defense costs incurred in *Bagley*. This is also a matter for the trial court to determine based on evidence presented by UMass, apportioned in the same manner as the attorney's fees.

Affirmed in part, reversed in part, and remanded for further proceedings in accord herewith. No costs to any party.