**FLEET NATIONAL BANK, Plaintiff,**

v.

**Anthony LIUZZO, University Nursing Care Center, Inc., Park Manor of Jamestown, Inc., Fenton Park Nursing Home, Greenhurst Health Care and Medical Center, Ltd., Thomas P. Cleary, and Walsh & Cleary, P.C., Defendants.**

**Anthony LIUZZO, University Nursing Care Center, Inc., Park Manor of Jamestown, Inc., Fenton Park Nursing Home, Greenhurst Health Care and Medical Center, Ltd., Plaintiffs,**

v.

**FLEET NATIONAL BANK, Defendant.**

**Civ. A. Nos. 89–0599L, 90–0027L.**

United States District Court,
D. Rhode Island.

June 12, 1991.

Richard F. Ziegler, Michael Chayet, Cleary, Gottlieb, Steen & Hamilton, New York City, Richard F. McMahon, McMahon & McMahon, Providence, R.I., for Fleet Nat. Bank.

William A. Long, Jr., O'Shea, Reynolds, Napier, Quinn & Cummings, Buffalo, N.Y., Gerald DeMaria, Providence, R.I., for Thomas C. Cleary and Walsh and Cleary, P.C.

Mark J. Schlant, Lawrence C. Brown, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, N.Y., Leo Wold, Goldenberg & Muri, Providence, R.I., for Anthony Liuzzo, University Nursing Care Center, Inc., Park Manor of Jamestown, Inc., Fenton Park Nursing Home, Greenhurst Health Care and Medical Center, Ltd.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

These consolidated cases are before the Court on cross motions for partial summary judgment. The dispute arose when Fleet National Bank ("Fleet") accelerated the maturity date of an $18 million commercial loan issued to Anthony Liuzzo ("Liuzzo") for use in connection with several nursing homes he owns. Shortly after receiving the notice to accelerate, Liuzzo filed an action in state court in New York, which was removed to the United States District Court for the Western District of New York and then transferred to this Court. In his three-count complaint, Liuzzo alleges that Fleet was barred from accelerating the loan by the equitable doctrines of unclean hands and estoppel; that the acceleration constituted a breach of good faith and fair dealing; and that Fleet breached its fiduciary duty to Liuzzo. When Fleet responded with a suit of its own (as outlined below), Liuzzo filed two counterclaims therein. Those counterclaims duplicated Counts 1 and 2 of his complaint. Liuzzo now moves for summary judgment on his counterclaims, and seeks a permanent injunction preventing Fleet from accelerating the loan. Fleet, in turn, moves for summary judgment on the two counterclaims and on each of the three counts of Liuzzo's complaint.

Fleet's complaint, filed in this Court, sets out five claims for relief: 1) Fleet seeks a judgment that it is entitled to accelerate the loan, and to collect on the indebtedness from Liuzzo and his nursing home guarantors; 2) Fleet seeks a recovery against Liuzzo for defrauding Fleet through affirmative misrepresentations and omissions; 3) Fleet seeks damages against Liuzzo's lawyer, Thomas P. Cleary (and through him, his codefendant law firm, Walsh & Cleary, P.C.) for having made intentional misrepresentations to Fleet; 4) Fleet seeks declaratory judgment that it may enforce all its rights and remedies under the loan agreement; and 5) Fleet seeks to enjoin Liuzzo from failing to pay future installments, in the event that Fleet does not succeed under Count 1. Fleet moves for summary judgment on its first, fourth and fifth claims for relief, which, taken together, constitute its breach of contract claim against Liuzzo and the nursing home guarantors. Liuzzo moves for summary judgment on these three claims, and on Count 2, the fraud claim.

## FACTUAL BACKGROUND

On July 28, 1988, Fleet and Liuzzo entered into the subject revolving credit agreement ("the loan agreement" or "RCA"), which consolidated approximately $16 million in outstanding debt with $2 million in new credit. To secure the loan, Liuzzo granted mortgages on the real property, and security interests in the assets of his nursing homes, University Nursing Care Center, Inc., Park Manor of Jamestown, Inc., Fenton Park Nursing Home, and Greenhurst Health Care and Medical Center, Ltd. (collectively "the nursing home guarantors").[1]

Not long after the loan's closing, Fleet became troubled about some aspects of Liuzzo's business operations, including a New York State grand jury investigation into Medicaid fraud at the nursing homes, and an unpaid fine owed to the New York Department of Health. The parties are in complete disagreement as to what Liuzzo knew about these matters, as well as the nature and timing of his disclosures to Fleet. What is not disputed is that on February 21, 1989, Fleet wrote Liuzzo a letter designating Liuzzo's failure to notify Fleet of the Medicaid investigation prior to the loan closing as an event of default under the loan agreement. Two additional defaults were cited: Liuzzo's failure to deliver audited statements for one nursing home, and his failure to maintain the agreed-upon cash flow at the nursing homes. After enumerating these defaults, the letter continued:

> Accordingly, due to these defaults and pursuant to section 3.02 of said agreement Fleet hereby informs you that until further notice it will not fund any additional requests which you may make for further advances of the loan. Until such a time, if any, that Fleet resumes making advances on this loan the commitment fee on the unused portion will cease to accrue. Fleet and its participants are presently discussing what, if any, addi-

tional action is appropriate to take at the present time in light of these defaults.

> Fleet reserves all of its rights to take whatever action it deems appropriate in order to enforce its remedies under the Loan Documents.

A meeting of the parties followed this letter, which, it appears, served only to intensify the dispute over Liuzzo's disclosures about the Medicaid investigation. On March 29, 1989, Fleet again wrote Liuzzo explaining that "given the nature of the defaults specified in our letter dated 2/21/89 and the resultant deterioration of your credibility with Fleet and the syndicate, it is clearly not in anyone's best interest to continue our relationship." The letter went on:

> As we discussed at our recent meeting, Fleet hereby asks that the Loan (and all related interest, fees and expenses) be repaid in full. Fleet will give you a reasonable period of time (which we expect to be less than six months) to find another lender or another method to repay this loan; *provided, however,* that Fleet reserves the right to exercise its remedies on account of such defaults if Fleet becomes aware of other existing defaults or if there occurs a material adverse change.

Fleet reiterated its reservation of all rights and remedies under the loan agreement.

Next, Fleet wrote Liuzzo on August 21, 1989, essentially reviewing the two prior letters and adding:

> Therefore, in view of the foregoing, the continued existence of various defaults (including but not limited to your continued refusal to pay Edwards & Angell's legal bills and your failure to provide your personal statement which was due on April 1, 1989) and the fact that six-month statements for the guarantors continue to indicate a deficient cash flow, you are reminded that said six-month period ends September 29, 1989.

---

1. The remaining defendants named in Fleet's complaint are Liuzzo's lawyer, Thomas P. Cleary, and his law firm, Walsh & Cleary, P.C. In Count 3 of its complaint, Fleet maintains that Mr. Cleary made material misrepresentations in discussions with bank officials and in the opinion letter he provided Fleet in connection with the loan. These claims are not the subject of any of the instant motions and, so, will not be addressed in this opinion.

Liuzzo did not comply with Fleet's request to repay the loan by September 29, 1989, and on October 1, 1989, he failed to tender the quarterly principal installment of $250,000.00. Liuzzo did pay the monthly interest installment due on October 17, 1989. However, since that time, he has made no further payments of principal or interest to Fleet.

On October 27, 1989, Fleet sent what it refers to as "an acceleration notice" to Liuzzo demanding full and immediate payment of all outstanding indebtedness on the loan. The letter reviewed the events of 1989, Liuzzo's alleged events of default, and Fleet's previous letters, and concluded with a demand.

> Based on the occurrence and continuation of these and other Events of Default, we wish to advise you (and by copy of this letter, each of the Guarantors) that we have declared the full amount outstanding under the Note, whether on account of unpaid principal, accrued interest, fees or costs and expenses, to be immediately due and payable. Demand is hereby made upon you (and, by copy of this letter, each of the Guarantors) for full and immediate payment of such indebtedness.

These lawsuits ensued.

## DISCUSSION

■ Fed.R.Civ.P. 56(c) provides the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A dispute over some key facts does not preclude a grant of summary judgment, as long as the facts, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the party opposing the motion, support judgment for the moving party. *Continental Casualty Co. v.* *Canadian Universal Insurance Co.,* 924 F.2d 370 (1st Cir.1991).

In the matter before the Court, Liuzzo argues that Fleet's demand for payment by September 29, 1989, constituted an acceleration. The acceleration was wrongful, Liuzzo maintains, because it was based on events of default that he denies. Furthermore, Liuzzo contends that after Fleet wrongfully elected to accelerate the loan, it was no longer entitled to monthly interest payments and quarterly principal payments, and thus he was justified in refusing to tender his October principal payment and instead taking court action to block the acceleration.

In response, Fleet characterizes its September 29, 1989, deadline as an informal attempt to resolve the dispute that arose between Fleet and Liuzzo when Fleet learned of the Medicaid investigation. Fleet asserts that the deadline in no way excused Liuzzo from making his installment payments, and that the acceleration, when it did occur on October 27, 1989, was justified by any one of Liuzzo's numerous defaults, including his failure to tender October's principal payment.

### Fleet's breach of contract claim

Both sides contest the factual events that led to the deterioration of their relationship, particularly those surrounding the Medicaid investigation and the Health Department fine. However, the contents of the four letters from Fleet to Liuzzo, quoted above, and Liuzzo's failure to tender any principal payment on the loan since October 17, 1989, are undisputed facts. This factual material provides the Court with a basis for proceeding with a summary judgment analysis of Fleet's breach of contract claim.

Although the parties' debate focuses on whether or not Fleet's first three letters (8/21/89; 3/29/89; and 2/21/89) taken together constitute an acceleration, the more appropriate way to frame the question is: Did the three letters constitute a breach of contract by Fleet, and if so, does that breach excuse Liuzzo's subsequent non-performance, that is, his failure to make prin-

cipal payments on the loan since October 1989 and to make interest payments since November 1989? For purposes of ruling on the summary judgment motion, the Court will assume that Fleet's letters were an attempt to prematurely accelerate the loan, and thus constituted a breach of the agreement. This allows the Court to focus on the issue of whether or not Liuzzo's failure to make principal and interest payments was excused by Fleet's actions.

The Rhode Island Supreme Court has discussed the notion of independent, as opposed to mutually dependent, promises in a contract in the context of divorce settlement in *Guglielmi v. Guglielmi*, 431 A.2d 1226 (R.I.1981). In that case, after the wife failed to transfer some stock as promised, the husband promptly discontinued support payments. The Court stated:

> The argument made by the husband about the wife's failure to abide by her part of the bargain reminds us that ordinarily the covenants and promises in a bilateral contract are mutually dependent. Conversely, if the promises are independent, then one party is bound to perform notwithstanding the other party's inability or refusal to discharge his or her obligation.

431 A.2d at 1228 (cites omitted). The Court concluded that the husband was obliged to continue support payments despite the wife's default, because "promises within a property settlement agreement are independent unless performance of one promise is expressly conditioned upon the performance of another." *Id.*

On the other hand, sometimes a party to a contract is excused from performance if the other party fails to perform. See *Aiello Construction Inc. v. Nationwide Tractor Trailer Training and Placement Corp.*, where the Court excused plaintiff's abandonment of a construction contract when defendant failed to make scheduled installment payments. 122 R.I. 861, 413 A.2d 85 (1980). "Since the breach by defendant went to the essence of the contract," the *Aiello* Court stated, "plaintiffs were excused from further performance." 122 R.I. at 865, 413 A.2d 85. Moreover,

compensation due plaintiffs for work already performed must be paid. In *Salo Landscape & Construction Co., Inc. v. Liberty Electric Co.*, the Rhode Island Supreme Court stated:

> ... an owner or prime contractor who fails to pay an installment due on a construction contract is guilty of a breach that goes to the essence of the contract and that entitles the injured party to bring an action based on a quantum meruit theory for the fair and reasonable value of the work done.

119 R.I. 269, 274–275, 376 A.2d 1379 (1977). *See also Pelletier v. Masse*, 49 R.I. 408, 143 A. 609 (1928).

██ These cases, while instructive, are readily distinguishable from the case at bar. Like the parties in *Guglielmi* and the construction contract cases, both Fleet and Liuzzo had ongoing duties under the contract: Fleet to advance sums of money to Liuzzo pursuant to the terms of the RCA; and Liuzzo to pay that money back according to a specified schedule. However, it is clear that Fleet had *already* loaned Liuzzo $17,500,000 at the time of the dispute, just short of the agreement's $18 million maximum. This situation is nothing like the construction contract scenario, where when one party abandons the contract, the other party, by continuing to perform, risks never being compensated. Here, even if Fleet's September 29 deadline is characterized as an improper acceleration and thus a breach of the contract, Liuzzo's duties remain unchanged. He still owes Fleet $17,500,000, plus interest, which he must repay in installments at specified times.

In this respect, this dispute resembles the facts of *United States of America v. 1300 Lafayette East*, 455 F.Supp. 988 (E.D. Mich.1978). There, when the plaintiff/lender sued for foreclosure, the defendant/borrower asserted there was no default and counterclaimed asserting that the acceleration, being wrongful, suspended his obligation to make monthly payments. The Court, ruling for the plaintiff, wrote:

> The fatal flaw in defendant's case is demonstrated by its inability to prove any damages. Even assuming, *arguen-*

*do*, that plaintiff's actions were wrongful, defendant still only owes a debt which it voluntarily incurred.... Even if the plaintiff's prayer for foreclosure and sale were denied, the full amount of the mortgage debt plus accrued interest would still be owed by defendant.

455 F.Supp. at 993. Similarly, Liuzzo's obligation to repay Fleet is unaffected by Fleet's acceleration, improper or not. Fleet is not demanding that he make payments over and above his voluntary and legitimate debt. Therefore, under traditional contract doctrine, Liuzzo is not excused from performance by Fleet's breach.

A review of the loan agreement further demonstrates that under no circumstances is Liuzzo excused from making periodic payments. The duty to pay is ongoing and failure to do so is listed as an "Event of Default" under Section 6.2 of the agreement, which states:

Default in the payment of any installment of the principal of, or interest on, the Note or any other indebtedness of the Borrower or any of the Guarantors to the Lender for more than ten (10) days after the date when the same shall become due and payable, whether at the due date thereof of at date fixed for prepayment or by acceleration or otherwise; ... then and in every such Event of Default and at any time thereafter during the continuance of such event, the Note and any and all other indebtedness of the Borrower and the Guarantors to the Lender shall become immediately due and payable, both as to principal and interest, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Note or other evidence of such indebtedness to the contrary notwithstanding.

Moreover, Fleet's rights and remedies are cumulative under Section 7.05 of the agreement, which allows the bank to accelerate the loan *and* demand periodic payments in the interim:

... nor shall any single or partial exercise by the Lender of any right, power or remedy under this Agreement preclude any other right, power or remedy. The remedies in this Agreement are cumulative and are not exclusive of any other remedies provided by law.

In keeping with its rights under the contract, Fleet expressed clearly in its letters to Liuzzo that he was expected to continue his periodic payments of both principal and interest until the dispute between the parties was resolved.

Given Liuzzo's undeniable legal and contractual obligation to repay Fleet, his proper course of action was to challenge Fleet's alleged wrongful acceleration while continuing to tender payments due under the loan agreement.[2] Because he has failed to tender the October principal payment and failed to make any payment since November 1989, Liuzzo has indisputably committed an event of default under the loan agreement, regardless of his claims concerning his pre-October 1989 activities (the Medicaid investigation, etc.). This event of default constituted a breach of contract and allowed Fleet then and there to accelerate the loan. Therefore, the Court grants Fleet's motion for partial summary judgment on Counts 1, 4 and 5 of its amended complaint. The Court declares that the loan is accelerated. Liuzzo's cross motions on these counts are denied, as is his motion to enjoin the acceleration.

### Fleet's fraud claim

Fleet's allegations that Liuzzo failed to disclose information about the fine and the investigation before the loan closed form the basis of the fraud count against Liuzzo. Because there are many disputed factual issues surrounding Liuzzo's disclosures about the fine and the investigation, the Court cannot decide, on a summary judgment motion, whether fraud or misrepresentations occurred, or even whether these matters constitute events of default

---

**2.** See *Egbert v. Freedom Federal Savings and Loan Association*, 14 Mass.App. 383, 440 N.E.2d 22 (1982) and *Allen Sales and Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.1975), where borrowers tendered payment while challenging lenders' actions, and placed the funds in escrow when payments were rejected.

under the loan agreement. Consequently, the Court hereby denies Liuzzo's motion for summary judgment on Count 2 of Fleet's amended complaint.

*Liuzzo's counterclaims and countersuit*

Liuzzo's first contention is that Fleet is barred from accelerating the loan because of equitable estoppel. Liuzzo asserts two grounds in support of this count in his complaint. First, he claims that Fleet is estopped from citing the Medicaid investigation as an event of default (and the basis of its acceleration) because Fleet knew about the investigation at the time of the loan's closing and waived any objection. Because the Court finds that Fleet was justified in accelerating the loan based on Liuzzo's failure to make installment payments, whether or not the Medicaid investigation provides a basis for Fleet's acceleration is moot. Liuzzo also claims that Fleet must be barred from labelling Liuzzo's failure to make principal and interest payments an event of default, because after Fleet imposed its September 29 payment deadline, it forfeited its right to receive periodic payments. The Court has already addressed this point. Because Fleet's remedies are cumulative under the loan agreement, it never forfeited its right to periodic payments. To safeguard his contract rights, while challenging Fleet's actions, Liuzzo should have continued to tender payments. Therefore, the Court grants Fleet's motion for summary judgment on this claim, dispensing simultaneously with Liuzzo's first counterclaim and Count 1 of his complaint.

Liuzzo's second claim is that Fleet's acceleration constituted a breach of good faith and fair dealing. "Fleet has breached this duty," Liuzzo writes in his memorandum of law, "both in accelerating the Loan in the first instance and in accelerating it a second time after maturing the entire debt." The Court has already concluded that the October 27, 1989, acceleration was justified by Liuzzo's failure to tender his October principal payment. As a matter of law, this action does not represent a breach of Fleet's duty of good faith and fair dealing.

■ However, Fleet's earlier actions, refusing to make further advances to Liuzzo and calling in the loan by September 29, 1989, are another matter. First, the Court must point out that the Rhode Island Supreme Court has recognized an "implied covenant of good faith and fair dealing between parties to a contract so that contractual objectives may be achieved." *Ide Farm, etc. v. Cardi*, 110 R.I. 735, 739, 297 A.2d 643 (1972). The scope of this obligation is not confined to those contracts governed by the Uniform Commercial Code, R.I.G.L. § 6A–1–203. However, it is important to note that a breach of the duty of good faith gives rise only to a breach of contract claim, not to an independent cause of action in tort. *A.A.A. Pool Service v. Aetna Cas. & Sur. Co.*, 121 R.I. 96, 395 A.2d 724 (1978).

In *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9 (1st Cir.1987), in upholding a jury's verdict on a bad faith claim in favor of a plaintiff/borrower, the United States Court of Appeals searched the parties' contract for a "demand provision" which would allow the bank to demand payment or terminate the relationship without cause. Finding no such provision, the Court wrote:

> Furthermore, the documents establishing the loan place conditions on the acceleration of payment or termination of the agreement. The "Secured Interest Note" provides for various conditions which would "render" the obligation "payable on demand." The "Security Agreement," also signed March 2, 1979, lists a series of events whose occurrence would signify that Reid would be in "default." The presence of such conditions in both documents indicates that the agreement could not simply be terminated at the whim of the parties; rather, the right of termination or acceleration was subjected to various limitations. The detailed enumeration of events that would *"render"* the note "payable on demand," or which would put Reid in "default," shows the qualified and relative nature of any "demand" provision. It would be

illogical to construe an agreement, providing for repayment or default in the event of certain contingencies, as permitting the creditor, in the absence of the occurrence of those contingencies, to terminate the agreement without any cause whatsoever. Under such a construction, the enumerated conditions would be rendered meaningless.

821 F.2d at 14 (original emphasis). The Fleet–Liuzzo RCA is similar to the one described in this passage from *Reid* in that it contains no demand provision, but it does list eighteen events of default, any of which enable Fleet to demand immediate and full repayment of the loan. If it is implicit in the *Reid* contract that the bank may not terminate the agreement on "a whim," this is equally true of the Fleet–Liuzzo contract.

■ To determine, then, whether Fleet's pre-October actions were justified, it is necessary to determine whether or not Liuzzo's actions during this time period constituted an event or events of default as defined by the loan agreement. Because the characterization of these actions is so thoroughly surrounded by dispute and contradictions, the Court is unable to make such a determination at this juncture in the proceedings. Consequently, the motions of both parties for summary judgment on Liuzzo's second claim, for breach of good faith and fair dealing, are denied. Thus Liuzzo's second counterclaim, as well as the identical claim, Count 2 of his complaint, survive.

The Court now comes to Liuzzo's final claim, Count 3 of his complaint, alleging that Fleet breached its fiduciary duty to Liuzzo. Here, Liuzzo's claim is not crystal clear. He alleges that in 1986, at the start of a prior loan agreement between the parties, Fleet insisted that Liuzzo retain the firm of G. William Miller & Co., Inc., ("Miller & Co.") as financial advisors. Through its relationship with Miller & Co., Fleet had access to information about Liuzzo which, according to Liuzzo, it "exploited [in] its position as the lender in the RCA to acquire priority interests in real property, personal property, collateral and assets of the plaintiffs." Count 3 of Liuzzo's complaint.

On the subject of the existence of a fiduciary relationship, the Rhode Island Supreme Court has said:

There are no hard and fast rules about when a confidential relationship will be found. The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions.

*Simpson v. Dailey*, 496 A.2d 126 (R.I. 1985).

In a complex international banking and trade case, the United States Court of Appeals for the Second Circuit, following New York law, found no fiduciary relationship between a bank and a borrower. The borrower/plaintiff claimed that it was owed a fiduciary duty by the bank because the bank served both plaintiff and its "closely-related" affiliate and had access to the financial records of both corporations. The Court dismissed these claims, however, explaining:

Notwithstanding [plaintiff/borrower's] allegations, New York law is clear that the usual relationship of bank and customer is that of debtor and creditor. And in this case, there is no evidence to indicate that either [defendant/bank] or [plaintiff/borrower] intended that their relationship be something more than just the debtor-creditor relationship.

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (1984).

■ In the case before the Court, there is similarly no evidence that Liuzzo and Fleet intended a fiduciary relationship to exist beyond the terms of their contractual debtor-creditor relationship. It is probable that a fiduciary relationship existed between Liuzzo and Miller & Co., and if Miller & Co. disclosed Liuzzo's confidential financial information to Fleet, that might give rise to a claim by Liuzzo against Miller & Co. for breach of its fiduciary duty to

him. But neither that relationship, nor the accompanying duties, would extend to Fleet, despite Fleet's insistence that Liuzzo seek financial advice from Miller & Co. in a prior financial transaction.

In short, this Court concludes that Liuzzo has completely failed to plead or offer any evidence which raises an issue that a fiduciary relationship ever existed between Fleet and Liuzzo as part of this or prior transactions between the parties. As the Supreme Court wrote in *Celotex Corp. v. Catrett:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because Liuzzo would have the burden of proving at trial that a fiduciary relationship existed between him and Fleet, and because there is no indication that he can prove that element of his case, the Court grants Fleet's motion for summary judgment on Count 3 of Liuzzo's complaint.[3]

### Conclusion

A recap of the claims and their disposition in the interest of clarity follows. Fleet's suit comprised five counts. Counts 1, 4 and 5 taken together constitute a single breach of contract claim. The Court has decided this claim in Fleet's favor. The loan is accelerated and Liuzzo presently owes the full amount borrowed plus interest and other costs. Count 2 of Fleet's complaint is a fraud claim for damages against Liuzzo. Only Liuzzo made a motion on this count and that motion is denied. Count 3 is a claim of misrepresenta-

tion against Liuzzo's lawyer. No motions were made on this claim.

Liuzzo's complaint contains three claims. The first claim is to estop Fleet from accelerating the loan. Fleet's motion for summary judgment on this claim is granted and Liuzzo's is denied. (This ruling encompasses Liuzzo's identical first counterclaim).

Liuzzo's second claim alleges that Fleet's early attempts to accelerate the loan and the ultimate acceleration both constitute breaches of Fleet's duty of good faith and fair dealing. Although Fleet's actual October 27, 1989, acceleration was justified and represented no breach of good faith, the characterization of the actions taken by Fleet to terminate the loan before October 27, 1989, is disputed. Therefore, both parties' motions on this claim (contained in both Count 2 of the complaint and the second counterclaim) are denied.

Fleet's motion for summary judgment on the third count in Liuzzo's complaint, that Fleet breached its fiduciary duty, is granted.

Because of Fed.R.Civ.P. 54(b), no judgment shall enter until the remaining issues in these lawsuits are resolved.

*It is so Ordered.*

---

**3.** Liuzzo did not pursue this claim in his counterclaim, nor did he make any motion on it.