297 A.2d 643.

IDE FARM & STABLE, INC. *vs.* ALFRED A. CARDI.

DECEMBER 8, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a civil action wherein the plaintiff seller seeks damages for the breach by the defendant buyer of a contract for the sale and purchase of real estate. A jury-waived trial was held in the Superior Court. The trial justice found for the buyer, and the seller has appealed. The seller is a corporation whose sole stockholders and officers are David B. Ide and his wife. Hereafter, we shall sometimes refer to the seller as "Ide" and to the buyer as "Cardi."

Ide was the owner of a 250-acre farm[1] located in the town of Richmond. On the farm can be found potato fields, silos, several barns, a gravel bank and a large two-story four-bedroom "farmhouse" which features an indoor swimming pool. On November 23, 1968, Cardi signed an agreement whereby he would purchase the farm sometime before December 31, 1968. The purchase price was $200,000. Cardi gave Ide's real estate broker a $3,000 deposit. The agreement, which was prepared by the broker, was set out

---

[1]The parcel is known as Prosser farm. Mr. Ide said the farm contained approximately 250 acres. The agreement, however, states that the parcel contains "by estimation One Hundred Sixty Six Acres more or less." The agreement also lists the buyer's wife as a party. She did not sign the agreement nor was she made a party to this suit.

on a printed form which is sold in many stationery stores. Once the agreement had been signed, Mr. and Mrs. Ide vacated the premises and moved to Florida. Cardi did not buy the farm. The farm was sold in April, 1969 for $125,-000. The seller seeks damages of $75,000.

The broker's draftsmanship is the source of the litigants' discord. The portion of the agreement which is relevant to this appeal appears below:

PBJ

Said premises are to be conveyed on or before December 31, 1968[2] by a good and sufficient warranty deed of the party of the first part, conveying a good and clear title to the same, free from all encumbrances and for such deed and conveyance the party of the second part is to pay the sum of Two Hundred Thousand Dollars ($200000.00                           dollars
of which Three Thousand Dollars ($3000.00) as deposit.    dollars
have been paid this day,                                       dollars
are to be paid in cash upon the delivery of said deed, and the remainder is to be paid by the note of the party of the second part, dated December 31 1968   $48500.00 second mortgage bearing interest at 7½% per cent per anum, payable semi-annually and secured by a power of sale mortgage, in the usual form, upon the said premises, such note to be payable Mortgage to be arranged.

The trial justice ruled that the phrase "Mortgage to be arranged" was ambiguous and allowed Cardi to testify that this language meant that the agreement was subject to his obtaining a first mortgage in the amount of at least $100,-000. Ide argues in the alternative that there is no ambiguity, but if there is, the trial judge has misconceived the evidence which was adduced in this phase of the case.

We think that the payment clause is steeped in obscurity. It calls for Ide to take back a second mortgage, but

---

[2]The broker typed the agreement. His skill in this field was somewhat on a par with his draftsmanship. It is unclear from the testimony as to whether the footnoted date should read December 31, 1968, or December 21, 1968, but what is clear is that the broker struck the wrong key on the typewriter. There is an inked correction which was initialed by Mr. Ide. An examination of the entire instrument would indicate a closing date of December 31, 1968.

stops short when it says "such note to be payable." When or how is it payable? Is it once a year? Does it contemplate monthly payments? It is impossible to tell if the other $148,500 due the seller is to be made up of cash and/or a mortgage. Furthermore, we need not spend any time conjuring up situations that could be embraced by the broker's inarticulate choice of the words "Mortgage to be arranged."

David B. Ide's interpretation of the ambiguous phrase differed from that of Cardi. He testified that all it meant was to indicate that there were numerous financial sources available to Cardi to which he could turn for mortgage assistance. He pointed to Cardi's father. He is in the construction industry and, according to Mr. Ide, had expressed a willingness to assist his son in purchasing the property, especially because of the gravel that could be taken from one portion of the parcel. Mr. Ide also described another scheme where Cardi could assume the outstanding mortgage and take a second and a third mortgage from Mr. Ide. However, there was a lack of definitiveness of this proposal especially regarding the interest to be charged.

The buyer disputed Ide's evidence. Cardi's father told the trial justice that when his son and Ide were discussing the sale, he was talking to an acquaintance who owned a nearby farm. The elder Cardi emphatically denied that he offered any financial help to his son.

The broker's testimony is deserving of comment.[3] He testified for the seller. On cross-examination, he admitted that the buyer had told him of his need to obtain financing

---

[3]The broker was a third-party defendant in an action brought by Cardi for the return of his deposit. It was admitted that Cardi told the broker to keep the deposit and consider it as compensation for work he did in trying to line up a mortgage for the buyer. Judgment entered in the Superior Court contained a finding for the broker. None of the litigants have challenged this portion of the judgment.

in the amount of at least $100,000 and that the agreement had to be subject to his securing a first mortgage. The broker testified, "I put it right in there." The broker said that at the signing he explained to Cardi that the phrase now in controversy meant that the agreement was subject to his getting the financing. He also stated that the phrase had been inserted in the contract at Cardi's specific request. Later, after a recess had been taken, this witness returned to the stand and modified his previous testimony by telling the trial court that he told Cardi nothing about the conditional status of the agreement but said, "We just put * * * ['Mortgage to be arranged'] in there and he read it and agreed to it." At this point he told the trial justice that the insertion was his own idea. There was further evidence which showed that the broker continued to advertise the farm as being for sale even though he and the seller testified that Cardi's purchase agreement was unconditional.

The trial justice, confronted with contradictory and, at times, inconsistent testimony, adopted the view that Cardi's obligation was subject to his obtaining a $100,000 first mortgage. He relied on the broker's prerecess testimony. We cannot fault him.

The seller, in one final effort to hold Cardi to his bargain, contends that his efforts to obtain the necessary first mortgage were nothing more than a sham. We agree with plaintiff's assertion that there is an implied covenant of good faith and fair dealing between parties to a contract so that the contractual objectives may be achieved. *Kerrigan* v. *City of Boston,* Mass., 278 N.E.2d 387 (1972); *Psaty & Fuhrman* v. *Housing Authority,* 76 R. I. 87, 68 A.2d 32 (1949); *Shaw* v. *E. I. DuPont de Nemours & Co.,* 126 Vt. 206, 226 A.2d 903 (1967). We cannot agree, however, that Cardi has failed to show his good faith. There was evidence that he contacted three banks in Rhode Island and made application to the Federal Land Bank—all with-

out success. One of the executives of a local bank was quoted as attributing Cardi's lack of success to the "tight money market."

This case, like most others, presented the trier of fact with the task of picking and choosing what testimony he should believe. He believed the buyer. He saw and heard the witnesses. His findings of fact are entitled to great weight. On an appeal, it became the seller's duty to prove that the trial justice had erred—this has not been done.

The plaintiff's appeal is denied and dismissed.

*Urso and Adamo, Natale L. Urso, John J. Adamo,* for plaintiff.

*Adler, Pollock & Sheehan, Incorporated, Peter Lawson Kennedy,* for defendant.