**Belinda D. HAYNIE, Plaintiff,**

v.

**Ann VENEMAN, Secretary, United States Department of Agriculture, Defendant.**

**Philip J. Haynie, II, et al., Plaintiffs,**

v.

**Ann Veneman, Secretary, United States Department of Agriculture, et al., Defendants.**

Nos. CIV.A.00–2493 (PLF), CIV.A.00–2516 (PLF).

United States District Court, District of Columbia.

July 23, 2003.

Steven Keith Davidson, Reid Henry Weingarten, Ellen Steury, Steptoe & Johnson, L.L.P., Washington, DC, for plaintiff.

Laurie J. Weinstein, Christy A. Slamowitz, U.S. Attorney's Office, Washington, DC, Brian C. Kennedy, U.S. Dept. of Justice, Washington, DC, for defendant.

OPINION

PAUL L. FRIEDMAN, District Judge.

These consolidated cases are before the Court on several motions: defendants' motions to dismiss or, alternatively, to strike plaintiffs' jury demands and prayers for interest in both cases, and plaintiff's motion for leave to amend her complaint in Civil Action No. 00–2493. In light of the divergence of procedural and substantive issues involved, the Court will address each case separately with respect to the pending motions. In this Opinion, the Court will consider only the motions pertaining to Civil Action No. 00–2493, the claims of plaintiff Belinda D. Haynie. Motions pertaining to Civil Action No. 00–2516 will be addressed by separate Memorandum Opinion.

Upon careful consideration of the parties' arguments and the record in this case, the Court concludes that plaintiff is entitled to file her amended complaint but that certain of the claims alleged therein are untimely and therefore must be dismissed. In addition, the Court concludes that it

must strike plaintiff's request for interest and her demand for a jury trial.

## I.  BACKGROUND

Plaintiff Belinda Haynie is an African–American woman who lives in the Northern Neck area of Virginia. *See* Am. Comp. at ¶¶ 6, 7. On or about March 12, 1997, plaintiff applied for a loan from the Rural Business Service ("RBS"), an agency of the United States Department of Agriculture ("USDA"). *See* Am. Comp. at ¶ 12. Plaintiff sought the loan on behalf of Haynie Enterprises, Inc. ("HEI"), a farming business of which plaintiff was at all times the president and sole shareholder and plaintiff's husband, Phillip Haynie, was the manager. *See id.* at ¶¶ 10, 12. By letter of May 22, 1997, USDA denied plaintiff's loan application, stating that the denial was based in part on the possibility that plaintiff was in personal bankruptcy or had not fully disclosed her bankruptcy-related liabilities in her application. *See id.* at ¶¶ 17–18. The letter also stated that the denial was warranted because HEI planned to employ Phillip Haynie as manager and USDA deemed him unacceptable for that position. *See id.* at ¶¶ 24, 28. Despite these statements, plaintiff contends that in fact she had met all of the loan criteria, had fully disclosed all bankruptcy-related liabilities and was at no time in personal bankruptcy. *See id.* at ¶¶ 13, 17.

Following the denial of her application, plaintiff alleges that USDA communicated with her directly and "informed Plaintiff that it would continue to work with her to shape the loan application so that it could be approved." Am. Comp. at ¶ 36. Based on that representation, plaintiff continued to consult with USDA officials over the next two years, hoping eventually to secure the loan for which she had applied in March 1997. *See id.* at ¶ 38. Plaintiff alleges that during this period USDA advised her that it would accept a second "feasibility study" in support of a renewed application, since the first study had been found unacceptable. *See id.* at ¶¶ 29, 40–42. She states that she received advance assurances from USDA that the second study would be acceptable as proposed and commissioned the study from a group of supervised college students, submitting the findings to USDA in support of her application. *See id.* at ¶¶ 40–42. Despite the alleged advance assurances to plaintiff, defendant ultimately found the new feasibility study to be inadequate on the ground that plaintiff's step-son, Philip J. Haynie, had participated in the study. *See id.* at ¶ 43. Plaintiff asserts that this finding was unfounded and discriminatory, claiming that USDA knew of her step-son's participation in the study from the outset and that the applicable regulations do not preclude such participation. *See id.* at ¶¶ 44–45.

In April 1998, plaintiff filed a discrimination complaint with the USDA Office of Civil Rights ("OCR") alleging discrimination by USDA in its handling and denial of her March 1997 loan application. *See* Am Comp. at ¶ 47. Plaintiff asserts that despite her pending complaint, USDA officials continued to represent that they would cooperate with plaintiff to ensure that she obtained the loan for which she had applied. In November 1998, plaintiff met with USDA officials in a renewed effort to determine how her loan application might be deemed acceptable. *See id.* at ¶¶ 48, 50. After continued meetings with USDA through the winter of 1998–99, plaintiff alleges that she submitted a loan re-application on behalf of HEI on March 8, 1999. *See id.* at ¶¶ 51–52. Although plaintiff asserts that her re-application was "submitted on the basis of specific advice and consultation received from USDA personnel over the previous few months," the re-application was denied by letter of March 31, 1999, on the ground that it was

incomplete. *See id.* at ¶¶ 53, 55. According to plaintiff, the specifics of USDA's charge that her application was incomplete directly contradicted the representations that USDA had made to her in the preceding months. *See id.* at ¶ 56.

After the denial of plaintiff's re-application, USDA officials advised plaintiff that she would have to incur substantial further expense to make her re-application complete but told her that she could obtain a loan from a commercial lender without such substantial expense. *See* Am. Comp. at ¶¶ 57–58. Plaintiff asserts that based on this advice she " 'voluntarily' withdrew her re-application" and applied to a commercial lender. *Id.* at ¶ 59. Ultimately, however, the advice from USDA about applying to a private lender "proved to be false and misleading." *Id.* at ¶ 60.

Finally, on February 17, 2000, the USDA OCR issued a decision on plaintiff's discrimination complaint, finding that plaintiff had not been discriminated or retaliated against by USDA. *See* Am. Comp. at ¶ 62. Plaintiff alleges that the OCR's decision rested on grounds that were directly contradicted by fact and/or were reached without adherence to required USDA procedures and therefore were improper and incorrect. *See id.* at ¶¶ 63–73. Plaintiff appealed the denial to the USDA National Appeals Division, but the decision was affirmed on appeal and communicated to plaintiff in April 2000. *See id.* at ¶¶ 75–76.

Plaintiff asserts that these events are part of a pattern of discrimination and retaliation against her based on her race and on her own and her husband's involvement in civil rights activities in opposition to USDA's discrimination against African Americans. *See* Am. Comp. at ¶¶ 78, 84,

86. Specifically, plaintiff argues that multiple acts by USDA—denying her initial loan application; offering false and misleading advice and assistance; denying her loan re-application; conveying false and misleading instructions on obtaining a private loan; and denying her discrimination complaint—constitute a continuing violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), which prohibits discrimination by a creditor against an applicant with respect to "any aspect of a credit transaction" on the basis of race or other protected characteristics. 15 U.S.C. § 1691(a).

At this early stage of the case, defendant does not challenge the substance of plaintiff's allegations but rather urges dismissal on the ground that her claims are untimely, arguing that the only act of discrimination alleged by plaintiff is the denial of plaintiff's original loan application, which took place beyond the statutory limitations period of two years prior to the filing of this action. *See* 15 U.S.C. § 1691e(f). In response, plaintiff argues that her claims are timely because of the continuing nature of USDA's discrimination. Relying on the "continuing violation" doctrine, plaintiff argues that the alleged acts of discrimination are so closely interrelated that they may be treated as a single, cumulative violation. If the Court treats them as such, plaintiff's claims will be rendered timely because the most recent related acts took place within the two-year limitations period.[1]

The Court concludes that plaintiff should be permitted to amend her complaint but that the acts alleged therein do not constitute a continuing violation of plaintiff's rights. The Court further concludes that

---

1. Defendant treats plaintiff's claim as resting on a single event: the denial of her loan application in May 1997. *See* Def. Mot. at 3; Def. Reply & Opp. at 2. Plaintiff, however, asserts that the unlawful conduct includes acts occurring as late as April 2000, well within the period of limitations. *See* Pl. Opp. & Mot. to Amend at 5.

although certain of plaintiff's discrete claims must be dismissed as untimely, plaintiff's case will not be dismissed in its entirety because plaintiff has alleged several acts within the two-year limitations period that are in themselves sufficient to state a claim. Finally, because plaintiff is not entitled to an award of interest against the government or a trial by jury, the Court will grant defendant's motion to strike.

## II. DISCUSSION

### A. Timeliness of Plaintiff's Claims

■ Defendant moves to dismiss plaintiff's October 17, 2000 complaint (and to deny plaintiff leave to amend her complaint) on the ground that her claims are untimely, arguing that the only alleged action on which she could base a claim of discrimination or retaliation under ECOA is the denial of her application for credit which occurred on May 22, 1997, outside the two-year period of limitations. Plaintiff, however, contends that multiple acts alleged in her original and amended complaint jointly constitute a "continuing violation" that extended into the limitations period, rendering all of her claims timely.[2] Upon review of the parties' arguments, plaintiff's initial and amended complaints, and the Supreme Court's recent explication of the "continuing violation" doctrine in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Court concludes that neither party's position is entirely persuasive.

ECOA requires that an action be brought no later than two years after the occurrence of an alleged violation. *See* 15 U.S.C. § 1691e(f). Plaintiff initiated this action on October 17, 2000, but seeks relief for violations beginning as early as May 1997—nearly three and a half years before the complaint was filed and thus nearly a year and a half beyond the limitations period. *See* Am. Comp. at ¶¶ 12, 16. Plaintiff acknowledges that some of the conduct at issue falls outside the two-year limitation period but asserts that these acts still should be considered because they are a part of defendant's "continuing violation" of ECOA. *See* Plaintiff's Memorandum In Civil Action No. 00–2493 In Opposition to Defendant's Motion to Dismiss and In Support of Plaintiff's Motion for Leave to File First Amended Complaint at 2–6 ("Pl. Opp. & Mot. to Amend").

In this circuit, it has been held that a plaintiff may litigate claims under the "continuing violation" theory that fall beyond the applicable limitations period if she can prove either a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Anderson v. Zubieta*, 180 F.3d 329, 336–37 (D.C.Cir. 1999) (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 72 (D.C.Cir.1982)); *see Palmer v. Kelly*, 17 F.3d 1490, 1495 (D.C.Cir.1994); *Milton v. Weinberger*, 645 F.2d 1070, 1075–76 (D.C.Cir.1981); *Shehadeh v. C. & P. Tel. Co. of Md.*, 595 F.2d 711, 721, 724 (D.C.Cir.1978); *Singletary v. District of*

---

2. Because the Court will permit plaintiff to amend her complaint for the reasons discussed *infra*, Section II.B., the Court looks to the amended complaint in considering defendant's motion to dismiss. The Court finds it reasonable to treat the motion as pertaining to both the initial and the amended complaints, since defendant's sole argument

against permitting the amendment is that the amended complaint is substantially the same as the initial complaint and thus that the amendment would be futile. *See* Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss and Defendant's Opposition to Motion for Leave to File Amended Complaint in 00–2493 at 2 ("Def. Reply & Opp.").

*Columbia,* 225 F.Supp.2d 43, 61 (D.D.C. 2002). Under the case law in this circuit, a continuing violation was to be established on a case-by-case review of the facts. *See Pleasants v. Allbaugh,* 185 F.Supp.2d 69, 74 (D.D.C.2002) (citing *Albritton v. Kantor,* 944 F.Supp. 966, 970 (D.D.C.1996)).

■ Recently, the Supreme Court rejected this and similar formulations of the test for a continuing violation. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 107–08, 122 S.Ct. 2061 *("Morgan")* (rejecting similar formulation employed by Ninth Circuit). In *Morgan,* the Court addressed the continuing violation theory with respect to employment discrimination claims, retaliation claims, and claims of hostile work environment brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Relying on the plain language of Title VII and Supreme Court precedent, the Court rejected the idea that the continuing violation theory can be employed to preserve untimely claims founded on discrete acts of discrimination even if they are substantially related to timely claims based on similar discrete acts. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 110–12, 122 S.Ct. 2061 (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (discrete acts that fall within statutory time period do not make timely claims relating to acts that fall outside time period)). The Supreme Court held that because an act of discrimination (denial of a promotion, failure to hire, termination,

etc.) and an act of retaliation necessarily take place on a particular day, that is the day the discriminatory act "occurred" and thus the day from which the statute of limitations runs. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 114, 122 S.Ct. 2061. Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.... The charge, therefore, must be filed within the [statutory] time period after the discriminatory act occurred." *Id.* at 113, 122 S.Ct. 2061.[3]

ECOA contains language similar to that of Title VII. It provides that it shall be unlawful for any creditor to discriminate against any applicant "with respect to any aspect of a credit transaction," 15 U.S.C. § 1691(a), and provides remedies for adverse actions taken on the basis of discrimination on the basis of race, color, religion, national origin, sex, marital status or age. 15 U.S.C. § 1691(a)(1). The term "adverse action" is defined as the "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Thus, the denial of plaintiff's credit application, like the alleged acts of discrimination and retaliation in *Morgan,* was, under ECOA, a "discrete act[ ] ... easy to identify." *National Railroad Corp. v. Morgan,* 536 U.S. at 114, 122 S.Ct. 2061. As is true with respect to Title VII, then, there can be no continuing violation under ECOA.

---

**3.** Holding that hostile work environment claims are qualitatively different from discrete acts of discrimination, the Court held that the continuing violation theory could be applied only to the former, reasoning that the unlawful practice of creating a hostile work environment "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, *in direct contrast to discrete acts, a single act of harassment may*

*not be actionable on its own." National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 115, 122 S.Ct. 2061 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (emphasis added). This sharp distinction drawn by the Court appears to preclude application of the continuing violation doctrine outside the hostile work environment context. *See id.* at 115–18, 122 S.Ct. 2061.

In light of *Morgan,* this Court concludes that plaintiff's untimely claims of discrimination, such as that based on USDA's denial of her initial loan application in May 1997, are not rendered timely by their relation to later acts that may be within the limitations period. As the Court reads *Morgan,* the law no longer allows otherwise untimely claims of discrimination or retaliation to be considered based solely on the theory that they are part of a series of related acts, only some of which are within the limitations period. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 113, 122 S.Ct. 2061; *see also Singletary v. District of Columbia,* 225 F.Supp.2d at 61 n. 2 ("Even were this Court to find that plaintiff has proven specific acts of unlawful retaliation during the statutory period, a recent Supreme Court case would likely bar the application of the continuing violation theory.") (citing *Morgan*). Instead, any claim (other than one for hostile work environment) based on an action that is part of a series of related discriminatory acts must be filed within the period of limitations of when that action itself occurred, that is, "on the day that it 'happened.'" *National Railroad Passenger Corp. v. Morgan,* 536 U.S. at 110, 122 S.Ct. 2061; *see also Lyons v. England,* 307 F.3d 1092, 1106–07 (9th Cir.2002) (each discrete discriminatory act is separate actionable employment practice); *Pleasants v. All-*

*baugh,* Civil Action No. 00–3094, 2002 WL 31520105 (D.D.C. Nov. 12, 2002) (in *Morgan,* Supreme Court "rejected the application of its 'continuing violation' theory to what the lower courts had called 'serial violations,' where one acts [sic] falls within the charge filing period and prior acts are sufficiently related to the timely filed charge.").

For these reasons, plaintiff may pursue her claims only to the extent that they are based on discrete acts of discrimination occurring within two years prior to the date on which she filed her complaint, October 17, 2000. The Court must dismiss those of her claims that are based on conduct that occurred more than two years before that date.[4]

Notwithstanding the Court's conclusion that the continuing violation doctrine cannot save plaintiff's untimely claims, the Court will not dismiss this action in its entirety. Instead, the Court will permit plaintiff to pursue any and all claims that are based on discrete acts allegedly occurring within the two-year period of limitations. Plaintiff has alleged several violations that occurred during the two-year period of limitations prior to the filing of the complaint. For instance, plaintiff alleges that she submitted a loan re-application in March 1999 and that her re-application was denied on improper grounds

---

**4.** The Supreme Court's decision in *Morgan* left open the possibility that a plaintiff might maintain a claim of "pattern and practice" discrimination based in part on acts falling outside the limitations period. *See National Passenger Railroad Corp. v. Morgan,* 536 U.S. at 115 n. 9, 122 S.Ct. 2061. Although plaintiff alleges that defendant engaged in a "pattern of racial discrimination ... directed at Philip Haynie and members of his family," Am. Comp. at ¶ 86, this is not the type of claim intended by the Court's reference to "pattern-and-practice" claims. Rather, the Court's reference likely refers only to allegations of *systemic* discrimination against a protected *class* of individuals where the alleged acts reflect an intent to discriminate against all persons in the class. *See Kaster v. Safeco Ins. Co. of America,* 212 F.Supp.2d 1264, 1269 n. 4 (D.Kan.2002). Although plaintiff asserts that she and her family were discriminated and retaliated against based on their race and that USDA's "loan policies and procedures have had a disparate impact on African American farmers," the core of plaintiff's challenge is defendant's individualized discrimination against her and her family, not a "pattern-and-practice" claim to which the exception suggested in *Morgan* might apply. *Compare* Am. Comp. at ¶ 107 *with Hargraves v. Capital City Mortgage Corp.,* 140 F.Supp.2d 7, 18 (D.D.C.2000).

several weeks later. *See* Am. Comp. at ¶¶ 52, 55. She also alleges that from 1997 through "at least April 1999" USDA made representations to plaintiff that were intended to misinform and mislead her and to maintain the appearance of fairness while continuing to discriminate and retaliate against her. *See id.* at ¶¶ 36–38. Viewing the allegations in the light most favorable to plaintiff, as the Court must at this stage, the Court concludes that plaintiff has alleged violations within the limitations period. Accordingly, the Court will grant defendant's motion to dismiss only with respect to those claims that are based on acts allegedly occurring outside the limitations period.

### B. *Leave to File Amended Complaint*

■ Under Rule 15 of the Federal Rules of Civil Procedure, a plaintiff may amend her complaint after the opposing party has filed a responsive pleading only by leave of court, which "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Here, defendant argues that plaintiff's motion for leave to amend her complaint should be denied because permitting the complaint to be amended would be both futile and prejudicial. On review of the amended complaint and the entire record in this case, the Court concludes that the amendment should be permitted.

■ As discussed above, plaintiff's amended complaint contains timely claims of discrimination based on acts that are alleged to have occurred within the two-year period of limitations. Although defendant characterizes these allegations as resting on mere "administrative processing issues that are not even actionable under ECOA," Def. Reply & Opp. at 5, defendant too narrowly interprets what is actionable under the statute.[5] Rather than prohibiting only the actual denial of a loan applica-

tion, the statute bars racial discrimination "with respect to *any aspect* of a credit transaction." 15 U.S.C. § 1691(a)(1) (emphasis added). Plaintiff's allegations of what occurred after defendant's denial of her original loan application—such as deeming plaintiff's re-application incomplete and providing misleading advice to induce plaintiff to withdraw her re-application—appear to fall well within the broad language of the statute. While it is true that "ECOA does not create an all-encompassing scheme to regulate all relations between lenders and their potential customers," *Lewis v. Glickman*, 104 F.Supp.2d 1311, 1318 (D.Kan.2000), the phrase "any aspect of a credit transaction" would be meaningless if read as suggested by defendant. Instead, the Court reads that phrase to prohibit discrimination with respect to those acts surrounding an application for credit that materially affect the applicant's ability to obtain the desired credit. Under this standard, it is apparent that many of the allegations in plaintiff's amended complaint are not clearly beyond the coverage of the statute; the amendment therefore is not futile.

■ Furthermore, the Court concludes that any prejudice to defendant resulting from plaintiff's amendment is minimal. In its cursory argument on this issue, defendant asserts that it will suffer prejudice on the ground that allowing plaintiff to amend her complaint "represents the difference between having to defend against the claim or not." Def. Reply & Opp. at 7–8. However true this assertion may be, such "prejudice" is not the sort intended to be prevented by the Court at plaintiff's expense. On the contrary, having to defend against plaintiff's claims on the merits is precisely what Rule 15 seeks to achieve: "If the underlying facts or circumstances relied upon by a plaintiff may be a proper

---

5. For ease of reference, the Court has as-    signed page numbers to defendant's reply.

subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In this case, defendant has offered no evidence of bad faith or dilatory motive on plaintiff's part, nor has defendant asserted that it lacked notice of plaintiff's timely claims prior to her motion to amend her complaint. Accordingly, the Court sees no undue prejudice to defendant and will grant plaintiff leave to file her amended complaint.

### C. Pre- and Post–Judgment Interest

■ Defendant asks the Court to strike plaintiff's request for interest on the ground that recovery of interest against the government is barred by the doctrine of sovereign immunity and the longstanding "no-interest rule," which preserves the government's immunity from interest even where the government has waived its general immunity to suit, " 'unless the award of interest was affirmatively and separately contemplated by Congress.' " *See Trout v. Sec'y of the Navy*, 317 F.3d 286, 290 (D.C.Cir.2003) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 317–18, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)).

Plaintiff acknowledges the traditional no-interest rule, but argues that she nonetheless is entitled to recover interest because Congress specifically waived immunity in the Equal Credit Opportunity Act. By including the government within the statute's prohibition of discrimination by creditors, plaintiff argues, Congress intended to make the government liable to the same extent as any other party. *See* 15 U.S.C. § 1691a(e), (f). Plaintiff suggests that in making the government lia-

ble, like any other creditor, for "any actual damages" under the statute, 15 U.S.C. § 1691e(a), Congress waived the government's immunity from interest awards, since interest is included within the usual definition of "actual damages." *See Library of Congress v. Shaw*, 478 U.S. at 321, 106 S.Ct. 2957 ("Prejudgment interest ... is considered as damages ...."). Relying on this provision of the statute, plaintiff argues that ECOA contains the requisite "express waiver" of immunity from interest in satisfaction of the standard set forth in *Shaw*. *See* Pl. Opp. & Mot. to Amend at 12.[6]

■ The Court concludes that plaintiff's claims for pre- and post-judgment interest must be stricken. All waivers of sovereign immunity are to be strictly construed, and any questions as to a waiver's scope are to be resolved in favor of narrower governmental liability. *See Trout v. Sec'y of the Navy*, 317 F.3d at 290 (citing *Brown v. Sec'y of the Army*, 78 F.3d 645, 649 (D.C.Cir.1996)), *cert. denied* 519 U.S. 1040, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996); *Nichols v. Pierce*, 740 F.2d 1249, 1257 (D.C.Cir.1984). This rule is even stricter with respect to claims of interest against the government, by virtue of the longstanding "no-interest rule" and the requirements laid out in *Shaw*. *See Trout v. Sec'y of the Navy*, 317 F.3d at 290;10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2672 at 282 (1998). In this case, the ECOA waiver of immunity upon which plaintiff relies makes no direct reference to claims of interest and thus cannot be said to "affirmatively and separately" waive the government's immunity with

---

**6.** In the alternative, plaintiff argues that this particular holding in *Shaw* no longer is valid because Congress superseded that aspect of the decision by providing an express waiver of immunity to interest in the Civil Rights Act of 1991. *See* Pl. Opp. & Mot. to Amend at 12; 42 U.S.C. § 2000e–16(d). In light of this circuit's continued application of the rule enunciated in *Shaw* since 1991, however, the Court finds that the *Shaw* test for waiver of immunity to interest remains good law. *See, e.g., Trout v. Sec'y of Navy*, 317 F.3d at 290.

**20**

respect to such claims. *Library of Congress v. Shaw,* 478 U.S. at 315, 106 S.Ct. 2957; *see* 15 U.S.C. § 1691(a). Accordingly, the no-interest rule applies, there has been no waiver of governmental immunity, and plaintiff's claims for pre- and post-judgment interest therefore will be stricken.

### D. Right to Jury Trial

The Court reaches the same conclusion with respect to plaintiff's demand for a jury trial. Just as it bars claims for pre-judgment interest, sovereign immunity precludes demands for jury trials on claims against the federal government unless Congress has clearly waived that immunity and expressly granted a right to a jury trial. *See Lehman v. Nakshian,* 453 U.S. 156, 164–65 & n. 13, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Because ECOA does not expressly provide or even mention the right to a jury trial, the rule of strict construction of waivers of sovereign immunity dictates that there is no right to a jury trial under this statute. Plaintiff is correct that Congress has provided the right to a jury trial under similar discrimination statutes, most notably under Title VII of the Civil Rights Act, as amended in 1991, *see* 42 U.S.C. §§ 1981a & 2000e *et seq.* Nevertheless, an express waiver of immunity in another context cannot substitute for the absence of a direct waiver of immunity under ECOA. Consequently, plaintiff has no right to a jury trial on her claims, and the Court will grant defendant's motion to strike plaintiff's jury demand.

### III. CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part defendant's motion to dismiss, allowing plaintiff to proceed only on those claims based on discrete acts occurring within the two-year period of limitations; will grant plaintiff's motion for leave to amend her complaint;

will grant defendant's motion to strike plaintiff's claims for pre- and post-judgment interest; and will grant defendant's motion to strike plaintiff's demand for a jury trial. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion to dismiss in Civil Action No. 00–2493 is GRANTED IN PART and DENIED IN PART; it is

FURTHER ORDERED that defendant's motion to dismiss is GRANTED with respect to all claims based on acts occurring beyond the two-year period of limitations; it is

FURTHER ORDERED that defendant's motion to dismiss is DENIED with respect to those claims based on acts occurring after October 17, 1998; it is

FURTHER ORDERED that defendant's motion to strike plaintiff's request for pre-and post-judgment interest and plaintiff's jury demand is GRANTED; it is

FURTHER ORDERED that plaintiff's motion for leave to amend her complaint is GRANTED; it is

FURTHER ORDERED that plaintiff's amended complaint shall be deemed filed as of this same day; and it is

FURTHER ORDERED that defendant shall file an answer to the amended complaint consistent with this Opinion no later than September 23, 2003.

SO ORDERED.